**The PEOPLE of the State of Colorado ex rel. ORANGE COUNTY, CALIFORNIA, ex rel. T.M.S., Obligee, Appellee,**

v.

**M.A.S., Obligor, Respondent–Appellant.**

**No. 97CA1556.**

Colorado Court of Appeals, Div. IV.

Aug. 6, 1998.

▪

Harden, Hass, Haag & Hallberg, P.C., George H. Hass, County Attorney, Sean C. McGill, Assistant County Attorney, Fort Collins, Colorado, for Appellee

Wyatt and Martell LLC, L. Allen Weaver, Fort Collins, Colorado, for Respondent–Appellant

Opinion by Judge ROY.

This action was initiated on April 7, 1991, in Orange County, California, under the Uniform Reciprocal Enforcement of Support Act (URESA). Respondent, M.A.S., appeals from the judgment of the trial court determining that he is the natural father of the child, B.W., and awarding child support. We affirm.

## I.

Respondent first contends that necessary parties were not joined in the action.

Section 19–4–110, C.R.S.1997, of the Uniform Parentage Act as amended effective May 18, 1993, *see* Colo. Sess. Laws 1993, ch. 210 at 955, provides that:

> The child may be made a party to the action. If the child is a minor the court may appoint a guardian ad litem. The child's mother or father may not represent the child as guardian or otherwise. The natural mother, *each man presumed to be the father under section 19–4–105,* and each man alleged to be the natural father *shall be made parties or, if not subject to the jurisdiction of the court, shall be given notice of the action* in a manner prescribed by the court and an opportunity to be heard. The court may align the parties. (emphasis added)

· The 1993 amendment substituted the word "may" for "shall" in the first sentence and substituted "the child" for "he" in the second sentence.

## A.

Respondent first maintains that §19–4–110 as it existed prior to the 1993 amendment should control these proceedings and, therefore, the child was a necessary party to the action. We disagree.

Changes in procedural law are immediately applicable to existing causes of action unless a contrary intent is expressed in the statute. *See Suley v. Board of Education,* 633 P.2d 482 (Colo.App.1981). Here, the amended statute was effective upon passage. *See* Colo. Sess. Laws 1993, ch. 210 at 955. Therefore, although the petition was filed in April 1991, the amended statute applied when the matter proceeded to hearing, and the child was not then an indispensable party. *See In Interest of A.R.W.,* 903 P.2d 10 (Colo.App.1994). Therefore, it was not mandatory that the child be joined in the action or that a guardian be appointed for the child, if the child were joined.

## B.

Respondent also contends that §19–4–110, as amended, is unconstitutional insofar as it no longer requires that the child be made a party to the action. The thrust of respondent's argument is that the statute gives mothers of illegitimate children greater rights than those of the child and, further, that the child should be made a party or be separately represented to participate in the decision as to whether the determination of paternity is in the best interests of the child. We need not address this contention, however, because on the grounds asserted the right to be joined belongs to the child, and respondent lacks standing to represent, or assert the rights of, the child.

Further, contrary to respondent's contention, we hold that his lack of standing to raise this issue remains even though the child here is not represented by a guardian ad litem.

See *In Interest of D.R.V.*, 885 P.2d 351 (Colo.App.1994)(construing present version of statute and holding father lacked standing to assert rights of child represented by a guardian ad litem).

## C.

■ Respondent also argues that the other presumed fathers were necessary parties and that the People are required to join or to involve them in the action seeking a declaration of his paternity. We conclude that any error in failing to notify the other presumed fathers was waived.

Here, the magistrate found that a man married to mother at the time of conception and birth was a presumed father under §19-4-105(1)(a), C.R.S.1997. The magistrate also found that a man with whom mother lived after separating from her husband, and whom she named on the child's birth certificate with his consent, was also a presumed father under §19-4-105(1)(c)(I), C.R.S.1997.

After completion of the evidentiary hearing concerning the issue of paternity, both parties submitted written closing arguments to the magistrate. In response to the argument that the other presumed fathers should have been given notice of the proceedings and made parties, the People suggested that the trial court stay the proceedings to allow the other presumed fathers to be notified of, and respond to, the proceedings pursuant to §19-4-110. Respondent opposed any stay of the proceedings and argued that he would be prejudiced by such a delay since the parties had already presented all of their evidence to the court.

Accordingly, in our view, respondent waived any right he may have had to require that notice be given to the other presumed fathers and, therefore, may not complain of that asserted procedural deficiency on appeal.

## II.

■ Respondent also asserts that, before they can assert and offer evidence that he is the natural father of the child, the People are required to negate the paternity of the other presumed fathers before they can assert and offer evidence that respondent is the natural father of the child. We disagree.

■ The five-year statute of limitations set forth in §19-4-107(1)(b), C.R.S.1997, relates to actions commenced by presumptive fathers for a declaration of the nonexistence of the father and child relationship. The statute does not require that one man's presumed paternity by marriage be negated before an action to assert a parent and child legal relationship by another man, based upon a different presumption, may be commenced. *W.C. in Interest of A.M.K.*, 907 P.2d 719 (Colo.App.1995).

Applying the rationale of *A.M.K.*, we also conclude that the statute does not require that another man's paternity, presumed for reasons other than marriage or attempted marriage, must be negated before an action to assert a parent and child legal relationship by another man can be commenced.

■ Further, §19-4-105(2)(a), C.R.S.1997, provides that a presumption under that section may be rebutted only by clear and convincing evidence. It also provides that: "If two or more presumptions arise which conflict with each other, the presumption which *on the facts* is founded on the weightier considerations of policy and logic controls." (emphasis added)

Here, the magistrate found that the most important inquiry was whether any of the presumed fathers had had sexual relations with mother approximately *nine months* before the child was born, *i.e.*, December 19, 1989.

The magistrate found that, in her sworn petition submitted under URESA, mother denied that she had sexual relations with her husband after February 1989. The magistrate further found that mother stated, in a notarized letter of August 15, 1994, that she first saw the man named on the birth certificate in March 1990, after a six-year absence. Finally, the magistrate found that mother believed that the child had been conceived on December 24, 1989, and that respondent admitted that he had had sexual relations with mother at the approximate time of conception.

In addition, we note the magistrate found that respondent's paternity was presumed pursuant to §19–4–105(1)(f), C.R.S.1997, by virtue of genetic testing indicating that respondent could not be excluded and that the probability of his parentage exceeded 97%, specifically 99.92% and 99.99%.

Thus, the presumption of the paternity of the other presumed fathers was rebutted by clear and convincing evidence. *See M.W. v. D.G.*, 710 P.2d 1174 (Colo.App.1985).

## III.

 Respondent also contends that he was denied the right to cross-examine a witness, and asserts that dismissal was warranted by mother's answers to interrogatories concerning the amount of support received for the child. We disagree.

In 1993, effective January 1995, URESA was repealed and reenacted as the Uniform Interstate Family Support Act (UIFSA), §14–5–101, et seq., C.R.S.1997. *See generally In Interest of R.L.H.*, 942 P.2d 1386 (Colo. App.1997); *see also* Schumacher, *The Colorado Uniform Interstate Family Support Act*, 23 Colo. Law. 2535 (1994).

Under §14–5–316(b), C.R.S.1997, a verified petition, affidavit, or document substantially complying with federally mandated forms, and a document incorporated by reference into any of them, which is not excluded by the hearsay rule if given in person is admissible in evidence if given under oath by a party or witness residing in another state.

Further, §14–5–316(f), C.R.S.1997, provides that, in a proceeding under UIFSA, a tribunal of this state may permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual, or other electronic means at a designated tribunal or other location in that other state.

Here, the record indicates that respondent expressly waived the right to have mother testify by telephone. In addition, the testimony concerning the amount of assistance mother had received was admissible since it was included as information required to be submitted as part of the uniform support petition filed in the state of California. Mother's answers to interrogatories implied that one-half of the monthly amount received was for the child whose paternity is the subject of this action. And, it is clear from the written order that the trial court computed respondent's support obligation only on the basis of the amount claimed for that child.

Accordingly, there was no error.

Judgment affirmed.

RULAND and CASEBOLT,JJ., concur.