240 P.3d 488 (2010)
In re the Parental Responsibilities of A.D., a Child, and Concerning Nicholas Rueda, Appellee, and
Lavern Davis, Appellant.
No. 09CA0756.
Colorado Court of Appeals, Div. III.
April 1, 2010.
*489 Donelson Ciancio & Goodwin, P.C., Cynthia L. Ciancio, Broomfield, Colorado, for Appellee.
David Hofer, Lakewood, Colorado, for Appellant.
Opinion by Justice ROVIRA.[*]
In this paternity action, Lavern Davis (mother) appeals the trial court judgment declaring Nicholas Rueda (petitioner) to be the presumed natural father of her child, A.D., and awarding him joint decision-making authority and parenting time. We affirm.
Petitioner and mother had a relationship that ended in 1999 when mother moved out-of-state. Mother gave birth to A.D. on August 18, 2001. Mother reconciled with petitioner and moved back to Colorado when A.D. was eleven months old. The parties lived together with A.D. as a family until January 2007, when mother broke off the relationship and moved in with her current husband. A.D. spent several overnights per week with petitioner for approximately one year. In February 2008, mother discontinued A.D.'s contact with petitioner.
On April 7, 2008, petitioner initiated this proceeding seeking an allocation of parental responsibilities under sections 14-10-123 and 14-10-124, C.R.S.2009. He subsequently amended his petition to include a claim to establish paternity under the Uniform Parentage Act (UPA), sections 19-4-101 to -130, C.R.S.2009.
Prior to entering permanent orders, the trial court conducted an evidentiary hearing and took judicial notice of the entire court record including the testimony taken at the temporary orders hearing over which it presided. The trial court noted petitioner's concession that he had not legally adopted A.D. and was not her biological father. Although A.D.'s biological father had not been determined, the court acknowledged that an individual mentioned by the mother as the possible biological father had received notice of the proceedings, but did not appear or express *490 any interest in the child. The birth certificate of A.D. states "father unknown." The court further found that mother had conceded that petitioner received A.D. into his home and openly held her out as his natural child. Therefore, the court determined that petitioner established his paternity of A.D. as a presumed natural father under section 19-4-105(1)(d), C.R.S.2009.
The court also determined that petitioner met the jurisdictional requirements of section 14-10-123(1)(c), C.R.S.2009, and had standing to pursue an allocation of parental responsibilities based on his contact and care of A.D. following the parties' breakup. The court found that petitioner proved by clear and convincing evidence that he and A.D. shared a preexisting bond of love and affection, that he was A.D.'s psychological parent, and that the child would face possible trauma if she lost all contact with him. The court ordered the parties to share decision-making responsibility and awarded petitioner parenting time, finding that such an allocation would be in A.D.'s best interests. The court also ordered father to pay monthly child support of $730.92.

I. Notice to and Joinder of Alleged Biological Father
Mother argues that the trial court's declaration of paternity and allocation of parental responsibility is invalid because the court failed to order that the alleged biological parent be notified of these proceedings as a parent and interested party under section 14-10-123(2), C.R.S.2009, and did not join him as an indispensable party under C.R.C.P. 19. However, because these issues affect the alleged biological father's rights only, we conclude that mother lacks standing to assert them. See People in Interest of J.A.S., 160 P.3d 257, 261 (Colo.App.2007) (mother appealing the termination of her parental rights lacked standing to assert issues affecting only father's rights).
Further, section 19-4-110, C.R.S.2009, provides that "each man alleged to be the natural father shall be made [a] part[y] or, if not subject to the jurisdiction of the court, shall be given notice of the action." Here, the person who was alleged to be the biological father was a resident of California, was not subject to the jurisdiction of the court, and was given notice and declined to participate.

II. Guardian Ad Litem
Mother next argues that the trial court erred by not making A.D. a party to the action and appointing a guardian ad litem to represent her. Again, we disagree.
Contrary to mother's argument, section 19-4-110 states, "The child may be made a party to the action. If the child is a minor, the court may appoint a guardian ad litem." Therefore, the statute no longer makes the child an indispensable party to the paternity action and no longer requires either that the child be joined in the action or that a guardian be appointed for the child. People ex rel. Orange County v. M.A.S., 962 P.2d 339, 341 (Colo.App.1998).
Further, the right to be joined belongs to the child, and mother has no standing to assert these issues on behalf of A.D. Id. (the right to be joined belongs to the child, and natural father lacked standing to represent, or assert the rights of, the child).

III. Presumptive Father Status
Mother contends that the trial court erred by determining that petitioner is A.D.'s presumptive natural father when he had admitted that he was not her biological father. We are not persuaded.
Under section 19-4-105(1)(d), a man will be presumed to be the natural father of a child if he received the child, while a minor, into his home and openly held the child out as his natural child. Section 19-4-105(2)(a), C.R.S.2009, provides that the presumption "may be rebutted in an appropriate action only by clear and convincing evidence" and that "[t]he presumption is rebutted by a court decree establishing paternity of the child by another man." Here, there was no such court decree.
Section 19-4-105(2)(a) also directs that if two or more presumptions arise which conflict with each other, the court should determine which presumption should control based upon "the weightier considerations of *491 policy and logic," taking into consideration all pertinent factors, including, but not limited to, those factors enumerated in the statute. Because A.D.'s purported biological father made no claim to paternity and petitioner was the only individual seeking to invoke a presumption under the statute, conflicting presumptions did not arise in this case. The fact that the petitioner acknowledges that he is not the biological father does not raise a conflicting presumption. Nevertheless, the trial court considered a wide range of circumstances concerning A.D. when it determined that petitioner had standing under section 14-10-123(1)(c), had functioned as A.D.'s psychological parent, and should be granted an allocation of parental responsibilities. Indeed, the court engaged in a systematic and detailed consideration of the statutory best interests factors under section 14-10-124(1.5), C.R.S.2009, in determining that petitioner should share decision-making responsibility and receive parenting time. The factors listed in section 19-1-105(2)(a), C.R.S. 2009, and those considered by the trial court involve considerable overlap. Consequently, despite the absence of conflicting presumptions, many, if not all, of the relevant concerns encompassed by the factors in section 19-1-105(2)(a) were considered by the trial court in determining paternity and allocating parental responsibilities.
Mother does not challenge the sufficiency of the evidence regarding whether petitioner proved he took A.D. into his home and publicly acknowledged her as his natural child. Indeed, as the court found, mother conceded those facts.
However, mother nevertheless argues that the presumption in section 19-4-105(1)(d) does not apply to petitioner in this instance based on the unambiguous language in section 19-4-102, C.R.S.2009, which defines the phrase "parent and child relationship" for purposes of the UPA as "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." She reasons that, as petitioner is neither A.D.'s biological nor adoptive parent, no legal parent-child relationship can be established even under the presumption of section 19-4-105(1)(d).
A statute should not be read in isolation, but should be read together with all other statutes relating to the same subject or having the same general purpose, so that the statute's intent may be ascertained and absurd consequences avoided. Safari 300, Ltd. v. Hamilton Family Enters., Inc., 181 P.3d 278, 280 (Colo.App.2007).
We agree with the trial court that mother's argument would render section 19-4-105(1)(d) superfluous. As the trial court recognized, if, under section 19-4-102, a parent-child relationship can only be created with adoptive or natural parents, there would be no need for the specific presumption applied here or the others available under section 19-4-105(1), C.R.S.2009.
Taking mother's reading to the extreme would produce a potentially anomalous result that would prevent a party seeking support from establishing a father-child relationship with a man who, although not a biological parent, would otherwise qualify as a presumed father. See § 19-4-107(2) (any interested party, including the departments of human and social services, may bring an action at any time to determine the existence or nonexistence of the father and child relationship presumed under section 19-4-105(1)(d), (e), or (f)). Such a result is contrary to the scheme of the UPA, which does not elevate the presumption of biology over the presumption of legitimacy, which it incorporates in several provisions of section 19-4-105(1), including subsection (1)(d). N.A.H. v. S.L.S., 9 P.3d 354, 360-61 (Colo.2000).
Further, nothing in the statutory provisions, whether read separately or together, provides that an admission by a man seeking parental rights that he is not the child's biological father conclusively rebuts the presumption under section 19-4-105(1)(d). The California Supreme Court addressed this issue in In re Nicholas H., 28 Cal.4th 56, 120 Cal.Rptr.2d 146, 46 P.3d 932 (2002), under provisions of its version of the UPA which are substantially identical to section 19-4-105(1)(d) and (2). It concluded that a presumed father's admission that he is not the biological parent does not necessarily rebut *492 the presumption of fatherhood that arises by receiving the child into his home and openly holding that child out as his natural child when no judgment has been entered that establishes the paternity of another man. 28 Cal.4th 56, 120 Cal.Rptr.2d 146, 46 P.3d at 933, 937. The court observed that if two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. See § 19-4-105(2)(a); see also In re Jerry P., 95 Cal. App.4th 793, 116 Cal.Rptr.2d 123, 130 (2002) (disagreeing with proposition that lack of a biological relationship to the child automatically defeats presumed father status).
Mother's narrow reading of section 19-4-102 limits the scope of the presumptions in section 19-4-105(1) without any indication in either provision that such effect is intended. Therefore, we reject her argument that the definition of a "parent and child relationship" automatically precludes petitioner from presumptive father status because he is not A.D.'s biological parent. Instead, we conclude that the definition in section 19-4-102 applies to a parent and child relationship once it has been declared and clarifies that it is the legal equivalent of the traditional relationships recognized between children and their adoptive or natural parents.

IV. Psychological Parent
Mother also challenges the court's determination of petitioner's presumed father status because it relied on its findings regarding his role as A.D.'s psychological parent. However, the court's order shows that its findings regarding psychological parenting pertained to its alternative determination regarding petitioner's standing to pursue an allocation of parental responsibility under section 14-10-123(1)(c).
Inasmuch as the court declared petitioner to be A.D.'s presumed father, he is her father for all legal purposes including the right to "`parenting time; the right to direct the child's activities; the right to make decisions regarding the control, education, and health of the child,' as well as the `obligation of support and the obligation to teach moral standards, religious beliefs, and good citizenship.'" In re Marriage of Ohr, 97 P.3d 354, 357 (Colo.App.2004) (quoting N.A.H., 9 P.3d at 357-59).
Accordingly, we need not reach and decide the issues mother raises regarding whether petitioner had standing under section 14-10-123(1)(c) to pursue an allocation of parental responsibility or whether the court properly accorded her the constitutional protections to which she would have been entitled had petitioner not been determined to be A.D.'s legal parent. See In re Reese, 227 P.3d 900, 903 (Colo.App.2010) (parent's liberty interest in the care, custody, and control of his or her child is not infringed when the parent's determination regarding the best interests of the child is overcome by clear and convincing proof of relevant factors and the court's determination of the best interests of the child).
We also note that mother has advanced no other challenge to petitioner's presumptive father status, nor does she appear to challenge the allocation of parental responsibilities on evidentiary grounds. In fact, mother indicates in her opening brief that the recommendations of the child and family investigator, which she maintains were insufficient to sustain the allocation of parental responsibility under an enhanced burden of proof, may well have satisfied a preponderance of the evidence standard.

V. Attorney Fees
Petitioner requests his attorney fees and costs incurred on appeal under C.A.R. 39.5. However, because we disagree that mother's arguments on appeal were either frivolous or groundless, the apparent basis for petitioner's request, we deny the request. Costs shall be awardable as provided under C.A.R. 39(a) and (d).
The judgment is affirmed.
Judge ROY and Judge RICHMAN concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2009.