In the Interest of S.N.V., a Child,

and

Concerning C.A.T.C., Petitioner–Appellee,

and

N.M.V., Respondent–Appellee,

and

B.V., Intervenor–Appellant.

No. 10CA1302.

Colorado Court of Appeals, Div. V.

Dec. 22, 2011.

Mark A. Dedrickson, P.C., Mark A. Dedrickson, Denver, Colorado, for Petitioner–Appellee.

Willoughby & Eckelberry, L.L.C., John L. Eckelberry, Denver, Colorado, for Respondent–Appellee.

Donelson Ciancio & Goodwin, P.C., Cynthia L. Ciancio, Jamie L. Rutten, Broomfield, Colorado, for Intervenor–Appellant.

Opinion by Judge RUSSEL.

This case is a modern version of the difficult problem presented to King Solomon: two women claim to be the mother of the same child. Here, one of the women is the biological mother, while the other claims legal motherhood under presumptions set forth in the Colorado Uniform Parentage Act (UPA), §§ 19–4–101 to –130, C.R.S.2011.

Unlike Solomon, we are not free to devise our own solution. We are bound by the UPA, as interpreted by the Colorado Supreme Court in *N.A.H. v. S.L.S.*, 9 P.3d 354, 357 (Colo.2000).

Under these authorities, we conclude that B.V. (wife) may bring an action to establish her legal maternity, even though she is not the biological mother. We therefore reverse the trial court's judgment in favor of

C.A.T.C. (birth mother) and remand for further proceedings.

## I. Factual Background

S.N.V. was born in 2007. It is undisputed that he was conceived through sexual intercourse between birth mother and respondent, N.M.V. (husband). However, the parties dispute many of the circumstances surrounding S.N.V.'s conception and birth.

Husband and wife assert that they arranged with birth mother to act as a surrogate. They assert that, as part of their unwritten agreement, they attended all of birth mother's medical appointments and paid for all expenses related to S.N.V.'s birth. They further state that they have been S.N.V.'s sole caregivers since his birth.

Birth mother asserts that S.N.V.'s conception was the result of her intimate personal relationship with husband. Birth mother denies the existence of any surrogacy agreement. And she states that she participated in S.N.V.'s care for the first two years of his life, until husband severed her contact with the child.

## II. Procedural History

In 2009, birth mother sought an allocation of parental responsibilities under section 14–10–123, C.R.S.2011. Husband moved to dismiss this action, arguing that birth mother was a mere surrogate.

Wife, meanwhile, filed an action under the UPA to establish that she is S.N.V.'s legal mother. In support of her petition, wife asserted that she and husband have cared for S.N.V. since his birth and have held him out to their community as their own child.

Birth mother moved to dismiss wife's petition, arguing that wife lacks the capacity to bring an action under the UPA.[1] Alternatively, birth mother requested summary judgment in her favor because she undisputedly is S.N.V.'s biological mother.

The cases were brought before a magistrate, who ruled in favor of birth mother.

---

1. Although framed in terms of *standing*, wife's argument concerns her statutory *capacity* to seek a declaration of maternity. *See R.McG. v. J.W.*, 200 Colo. 345, 347 n. 3, 615 P.2d 666, 668 n. 3 (1980). We therefore use the term capacity.

The magistrate concluded that, although wife had the capacity to bring this action, birth mother must prevail as a matter of law because she is the biological mother. (The magistrate then ruled that birth mother could continue to pursue an allocation of parental responsibilities.)

The district court affirmed the magistrate's decision. However, unlike the magistrate, the court ruled that wife lacks the capacity to seek a declaration of maternity because she admits that she is not S.N.V.'s biological mother.

### III. Capacity

■ Wife contends that the court erred in ruling that she lacks the capacity to bring this action. We agree.

Three provisions govern our determination:

1. *Capacity to determine the existence of a mother-child relationship.* Under section 19–4–122, C.R.S.2011, "[a]ny interested party may bring an action to determine the existence or nonexistence of a mother and child relationship." Although section 19–4–122 does not define "interested party," it states that, "[i]nsofar as practicable, the provisions of [the UPA] applicable to the father and child relationship apply."

2. *Capacity to determine the existence of a father-child relationship.* Section 19–4–107, C.R.S.2011, lists the parties who may bring an action to determine paternity. As pertinent here, the list includes any man presumed to be the child's father under section 19–4–105, C.R.S.2011.[2]

3. *Terms interchangeable.* Section 19–4–125, C.R.S.2011, states that, "[i]n case of a maternity suit against a purported mother, where appropriate in the context, the word 'father' shall mean 'mother.'"

In combination, these provisions establish that an action to determine legal maternity may be brought by any woman who is presumed to be the child's mother under section 19–4–105.

(Birth mother argues that the legislature did not intend for section 19–4–107's capacity provisions to apply to actions to determine maternity. But we see no textual evidence to support her view. We think that, under section 19–4–125, it is "appropriate in the context," to substitute "mother" for "father" when interpreting section 19–4–107. And we think that this interpretation is invited by section 19–4–122: "Insofar as practicable, the provisions of [the UPA] applicable to the father and child relationship apply.")

Here, wife asserts presumptions of maternity under 19–4–105 because (1) she was married to husband at the time of S.N.V.'s conception and birth, and (2) she accepted S.N.V. into her home and has held him out to her family and community as her own child. *See* § 19–4–105(1)(a), (1)(d), C.R.S.2011. On the basis of these presumptions, wife has the capacity, as an "interested party" under section 19–4–122, to bring this action.

We therefore reverse the district court's judgment and remand for further proceedings on wife's petition.

---

**2.** Here are the pertinent subsections of section 19–4–107:

(1) A child, his natural mother, or a man presumed to be his father under section 19–4–105(1)(a), (1)(b), or (1)(c) or the state, the state department of human services; or a county department of social services, pursuant to article 13 or 13.5 of title 26, C.R.S., or article 5 of title 14, C.R.S., may bring an action:
(a) At any time for the purpose of declaring the existence of the father and child relationship presumed under section 19–4–105(1)(a), (1)(b), or (1)(c); or
(b) For the purpose of declaring the nonexistence of the father and child relationship presumed under section 19–4–105(1)(a), (1)(b), or

(1)(c) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party. (2) Any interested party, including the state, the state department of human services, or a county department of social services, pursuant to article 13 or 13.5 of title 26, C.R.S., or article 5 of title 14, C.R.S., may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under section 19–4–105(1)(d), (1)(e), or (1)(f).

## IV. Remand

Because the issue will arise on remand, we address the magistrate's ruling in favor of birth mother. The magistrate ruled, as a matter of law, that birth mother is S.N.V.'s "natural mother" within the meaning of the UPA because she undisputedly is the biological parent. (The district court affirmed that part of the magistrate's order without substantive discussion.)

■ Wife argues that biology is not the only factor to consider in determining the mother-child relationship under the UPA. Following the supreme court's analysis in *N.A.H.*, 9 P.3d 354, we agree.

In *N.A.H.*, two men claimed to be the child's father. One man's claim rested on the presumptions set forth in section 19–4–105(1)(a) (presumption of legitimacy) and (1)(d) (receiving the child into his home and holding out the child as his own). The other man's claim was based on biology—"a competing presumption that presumes a man to be a child's legal father if genetic testing reveals that he is the biological father." *N.A.H.*, 9 P.3d at 360 (citing § 19–4–105(1)(f), C.R.S.2011). The supreme court ruled that biology does not automatically prevail: "[N]either the presumption of legitimacy nor the presumption based on biology is conclusive." *Id.* at 362. Instead, held the court, the competing claims must be resolved by focusing on the best interests of the child. *Id.* at 363–66; *see also People in Interest of C.L.S.*, —— P.3d ——, ——, 2011 WL 5865898 (Colo.App.2011) (concluding, from the principles set forth in *N.A.H.*, that the object of Colorado's scheme is not necessarily to identify the man most likely to have been the biological father).

Here, the question is whether *N.A.H.*—or, more precisely, the supreme court's interpretation of the UPA as it applies to paternity actions—also applies to maternity actions. We conclude that it does.[3]

■ The parent-child relationship is the legal relationship that exists between a child and his or her natural or adoptive parents. It is a relationship incident to which the law imposes certain rights, privileges, duties, and obligations, and it includes both the mother-child relationship and the father-child relationship. *See* § 19–4–102, C.R.S.2011.

The UPA serves the dual purposes of establishing and protecting the parent-child relationship. *See R.McG. v. J.W.*, 200 Colo. 345, 349, 615 P.2d 666, 669 (1980). The act governs any dispute about the existence of a parent-child relationship.

Section 19–4–104, C.R.S.2011, describes the manner in which maternity may be established under the UPA: "The parent and child relationship may be established between a child and the natural mother by proof of her having given birth to the child or by any other proof specified in this article . . . ."

Under this provision, proof of "having given birth" is but one way of establishing the mother-child relationship. The relationship also may be established "by any other proof" specified in the UPA. *See In re Marriage of Mugge*, 66 P.3d 207, 211 (Colo.App.2003) (we construe statutes as a whole, giving effect to every word, and we presume that the legislature did not use language idly).

Section 19–4–105 sets forth the "other proof" by which parental relationships may be established:

(1) A man is presumed to be the natural father of a child if:

(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage . . . ;

. . . .

(d) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child;

. . . .

(f) The genetic tests . . . have been administered . . . and the results show that the alleged father is not excluded as the probable father and that the probability of his parentage is ninety-seven percent or higher.

---

3. Because we conclude that the supreme court's interpretation applies to maternity actions, we need not address wife's arguments under the Equal Protection Clause.

We recognize that, on its face, section 19–4–105 applies only to paternity determinations. But, in line with our previous observations, we conclude that section 19–4–105 is extended to maternity determinations by sections 19–4–122 and 19–4–125. *See* § 19–4–122 ("Insofar as practicable, the provisions of [the UPA] applicable to the father and child relationship apply."); § 19–4–125 ("In case of a maternity suit against a purported mother, where appropriate in the context, the word 'father' shall mean 'mother.' "); *see also In re M.C.*, 195 Cal.App.4th 197, 123 Cal.Rptr.3d 856, 869 (2011) (under California's version of the UPA, "[t]he principles regarding the presumptions of paternity also have been applied with equal force to a woman seeking presumed mother status").

Thus, under section 19–4–105, a woman may gain the status of a child's natural mother even if she has no biological tie to the child. A woman's proof of marriage to the child's father, or her proof of receiving the child into her home and holding the child out as her own, also may establish the mother-child relationship.

It follows that the magistrate erred in concluding that birth mother's claim automatically prevails over that of wife. We therefore direct the court to determine the mother-child relationship according to the standards set forth in *N.A.H. See C.L.S.*, —— P.3d at —— (setting forth the procedures and standards that govern paternity determinations under the UPA).

We do not suggest that, in determining best interests, a court must treat statutory presumptions and biological relationships as equals. Nor do we suggest that biological relationships are always the same. We simply note that these interests must be considered, along with all other relevant facts, in determining the outcome of an action under the UPA.

### V. Other Issues

Wife contends, birth mother concedes, and we agree, that the court erred in ruling that S.N.V. must be a party to the action. The UPA no longer requires such procedures for a minor child. *See In re A.D.*, 240 P.3d 488, 490 (Colo.App.2010) ("[T]he statute no longer makes the child an indispensable party to the paternity action and no longer requires either that the child be joined in the action or that a guardian be appointed for the child.").

Because we have ruled in wife's favor, we deny birth mother's request for her attorney fees on appeal under C.A.R. 38(d).

We do not address birth mother's request for attorney fees under section 14–10–119, C.R.S.2011, because that request is more appropriately addressed to the district court. *See In re Marriage of Chester*, 907 P.2d 726, 731 (Colo.App.1995).

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CARPARELLI and Judge ROMÁN concur.