25CA1653 In Interest of AG 03-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1653
Weld County District Court No. 24JV107
Honorable Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.G., a Child,

and Concerning T.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greely, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding involving conflicting presumptions of parentage, T.G. (biological father) appeals the judgment adjudicating G.G. (psychological father) the legal father of A.G. (the child).  We affirm.

## I.    Relevant facts

¶ 2    G.M.G. (mother) gave birth to the child in 2021.  At the time, mother was in a relationship with psychological father, who was present at the child's birth and is named on her birth certificate.  About five months later, all parties learned the results of a home genetic test that indicated biological father was the child's biological father.

¶ 3    When the child was three years old, the Weld County Department of Human Services filed a petition in dependency and neglect concerning the child and her siblings.  (The child's siblings aren't involved in this appeal.)  The Department also sought to determine the child's paternity and named both psychological father and biological father as respondents in the petition.

¶ 4    Later, the court held a paternity hearing.  The child was nearly four years old at the time and had resided with psychological father for most of her life.  After hearing the evidence, the court

1

determined that two parentage presumptions applied to each man, and thus, each was a presumed parent under Colorado's Uniform Parentage Act (UPA). *See* § 19-4-105(1), C.R.S. 2025. Then, after considering the factors in section 19-4-105(2) and the best interests of the child, the court adjudicated psychological father the child's legal father.

## II. Parentage Determination

¶ 5 Biological father contends that the juvenile court erred by failing to adjudicate him the child's legal father. We disagree.

### A. Legal Framework and Standard of Review

¶ 6 A juvenile court may determine a child's parentage as part of a dependency and neglect proceeding by following the procedures outlined in the UPA. *See People in Interest of J.G.C.*, 2013 COA 171, ¶¶ 10-11.

¶ 7 Under the UPA, parentage isn't limited to persons with a biological connection to the child. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 17. Rather, the UPA provides five ways in which a person may be a presumed natural parent of a child. § 19-4-105(1)(a)-(d), (f). As relevant here, a person is presumed to be the natural parent if, (1) "[a]fter the child's birth, the person and

2

the parent who gave birth to the child have married" or attempted to do so, and the person is, with their consent, named on the child's birth certificate (birth certificate presumption); (2) the person "receives the child into the person's home and openly holds out the child as the person's natural child" (holding out presumption); or (3) genetic testing shows the person isn't excluded as the probable biological parent and "the probability of the person's genetic parentage is ninety-seven percent or higher" (biological presumption). § 19-4-105(1)(c)(II), (d), (f).

¶ 8    If a presumption is established, it may only be rebutted by clear and convincing evidence. § 19-4-105(2)(a); *K.L.W.*, ¶ 70. But like here, when two or more conflicting presumptions arise, and none has been rebutted, the presumption that, on the facts, is founded on the weightier considerations of policy and logic controls. *See* § 19-4-105(2)(a); *J.G.C.*, ¶ 22. In determining which of the conflicting presumptions controls, the court must consider "all pertinent factors," including those listed in section 19-4-105(2)(a)(I)-(VIII), and focus on the child's best interests. *K.L.W.*, ¶ 41. The result of this process is to render one of the people with a

conflicting parentage presumption the child's legal parent, while the other person becomes a "nonparent." *See id.* at ¶ 21.

¶ 9    We defer to the court's factual findings if they are supported by the record. *Id.* at ¶ 42. But we review de novo whether the court applied the correct legal standard. *Id.*

### B.    Analysis

¶ 10    Biological father contends that the court failed to properly apply section 19-4-105 because it didn't sufficiently identify the parentage presumptions implicated in this case. But the juvenile court determined, on one hand, that the holding out presumption and birth certificate presumption applied to psychological father. On the other hand, it found — and it is undisputed — that the biological presumption and holding out presumption applied to biological father. The court concluded that none of these presumptions were rebutted. *See* § 19-4-105(2)(a); *K.L.W.*, ¶ 70.

¶ 11    Moreover, it was undisputed in the juvenile court that these were the relevant presumptions in the case. During the Department's closing argument, the county attorney asserted that these presumptions applied to psychological father and biological father, respectively. In the arguments that followed, no party

4

disputed that these presumptions applied or argued that any had been rebutted.

¶ 12     Biological father next challenges the court's determination that the holding out presumption applied to psychological father.  He contends that because psychological father knew — for most of the child's life — that he wasn't biologically related to her, he didn't openly hold her out as "[his] natural child."  *See* § 19-4-105(1)(d).

¶ 13     To the contrary, "nothing in the statutory provisions, whether read separately or together, provides that an admission by a man seeking parental rights that he is not the child's biological father conclusively rebuts" the holding out presumption.  *In re Parental Responsibilities of A.D.*, 240 P.3d 488, 491 (Colo. App. 2010); *see In Interest of S.N.V.*, 284 P.3d 147, 151 (Colo. App. 2011) (noting that a woman can establish the holding out presumption even if she has "no biological tie to the child"); *see also People in Interest of O.S-H.*, 2021 COA 130, ¶ 52 ("[A] person may gain the status of a child's natural parent by holding the child out as his own.").  As the Department points out, the UPA contains no requirement that a presumptive parent believe that they are a child's biological parent in order to hold out that child as their natural child.  *See*

§ 19-4-105(1)(d); *S.N.V.*, 284 P.3d at 151; *cf. A.D.*, 240 P.3d at 491-92 (argument that a parent-child relationship can only be created with a biological or adoptive relationship would render the holding out presumption, and the other statutory presumptions, superfluous).

¶ 14　　Contrary to biological father's argument, the record supports the juvenile court's determination that psychological father held out the child as his child. As noted, psychological father attended the child's birth and was named on her birth certificate. At the time of the hearing, the child resided with psychological father and his two biological children, the child's half-siblings. Multiple witnesses testified that psychological father treated the child no differently than his biological children. The caseworker testified that psychological father referred to the child as "his daughter" and that the child called him "dad." During psychological father's testimony, he repeatedly referred to the child as "mine." Mother and psychological father testified that his extended family treated the child no differently than his biological children.

¶ 15　　Biological father next appears to argue that psychological father had lived with the child only "intermittently since her birth,"

6

and thus, didn't "receive[ her] into [his] home" as required to avail himself of the holding out presumption.  *See* § 19-4-105(1)(d).  To be sure, the child had moved homes multiple times during her nearly four years.  That said, the child resided with psychological father for most of her life; she lived outside his home during only a roughly three-month period and a separate one-month period.  The court thus found, with support from this and other evidence, that psychological father had been a "consistent part" of her life.  In any event, biological father cites no authority for the proposition that gaps in a psychological parent living with a child can negate or render the holding out presumption unavailable.  *See* § 19-4-105(1)(d).  Nor are we aware of any.

¶ 16    To the extent that biological father otherwise asks us to reweigh the evidence and substitute our judgment for that of the juvenile court, we won't do so.  *See K.L.W.*, ¶ 62.

¶ 17    Accordingly, the court didn't err when it determined that the holding out presumption applied to psychological father.

¶ 18    Biological father also disputes the application of the birth certificate presumption, asserting the record contains no evidence showing that mother and psychological father married or attempted

7

to do so after the birth of the child. *See* § 19-4-105(1)(c)(II). But we need not reach this issue because the court properly determined that the holding out presumption applied to psychological father. *See L&R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where the outcome wouldn't change); *People in Interest of R.R.*, 607 P.2d 1013, 1015 n.2 (Colo. App. 1979) (same).

¶ 19 Biological father doesn't challenge the court's resolution of the conflicting parentage presumptions, which resulted in its determination that psychological father was the child's legal father. Thus, we don't address that issue. And because the court correctly applied the law and properly determined that psychological father was a presumed father under the UPA, we won't disturb its judgment.

### III. Disposition

¶ 20 The judgment is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.