Charles DAVIS *v.* CHILD SUPPORT ENFORCEMENT UNIT

95-641                                                    933 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*Wilson & Associates*, by: *E. Dion Wilson*, for appellant.

*Charles E. Halbert, Jr.*, for appellee.

DAVID NEWBERN, Justice. Jacqueline Sims, a Minnesota resident, executed a "Uniform Support Petition" there. She claimed that the appellant, Charles Davis, was the father of her child, Jeremy Arnett, and sought $250 per month in support payments and "reimbursement" in the amount of $3850. Mr. Davis resides in Helena. In accordance with Minnesota Uniform Reciprocal Enforcement of Support Act provisions, the petition was forwarded by a Minnesota district court to the appellee, Arkansas Child Support Enforcement Unit, which filed paternity and support claims against Mr. Davis in the Phillips County Chancery Court.

Mr. Davis submitted to a blood (DNA) test in which the likelihood of his being the father of Jeremy Arnett was determined to be 99.86% when compared with "an untested, unrelated man of the North American Black population." Pursuant to the Uniform Interstate Family Support Act (UIFSA), Ark. Code Ann. §§ 9-17-101 through 9-17-902 (Repl. 1993), a hearing was held on the petition. *See* § 9-17-401(c) which gives an alleged support obligor the right to "notice and opportunity to be heard."

Mr. Davis objected to the proceeding on the basis that the Court lacked jurisdiction, and he declined to present evidence. After the Court reached its decision finding Mr. Davis to be the father of the child and entering its order of support, Mr. Davis filed a motion challenging the constitutionality of the proceedings. The Court entered a further order overruling the motion and rejecting the constitutional arguments made by Mr. Davis. We affirm the decision.

### 1. Jurisdiction

Mr. Davis makes no argument which would seem to

challenge the Chancellor's jurisdiction of the subject matter, so we assume his argument is directed to jurisdiction of the person. He recites that Ms. Sims is not a resident of Phillips County and cites *Dobson* v. *State,* 69 Ark. 376, 63 S.W. 796 (1901). The *Dobson* case is completely inapposite, as the issue there was whether "the county judge in vacation, as distinguished from the county court," had the right to hear and determine "bastardy cases." The judgment against the putative father was affirmed, upholding statutory language allowing the judge to hear such cases "in vacation." Mr. Davis does not contend that his residence is other than Phillips County, and we have no reason to suspect the Court lacked jurisdiction of him.

### 2. Right of confrontation

Mr. Davis points out that the evidence against him consisted of two affidavits, that of the expert who conducted the blood test and that of Ms. Sims. He contends he was denied his right, accorded by the Sixth Amendment to the Constitution of the United States, to confront the affiants. His argument is that the affidavits of those persons should not have been introduced into evidence and considered by the Court. He is aware that the Sixth Amendment is, by its language, limited to "criminal prosecutions," but he argues that the proceeding against him is "quasi-criminal," and he contends he is thus entitled to the same confrontation right as a criminal defendant.

The *Dobson* case is ancient and does not stand for the proposition for which it is cited, but it may display the manner in which Mr. Davis has been misled into this argument. In 1901 we used terminology like "complaint charging [a] ... person with being the father of a bastard child" and "conviction" of being the father of a "bastard child." The terminology was suggestive of criminal prosecution. Mr. Davis supports his argument with references to Ark. Code Ann. §§ 9-10-110 and 9-17-316 (Repl. 1993), contending that, like a criminal, he faces incarceration if he disobeys the support order.

We find nothing in § 9-17-316 suggesting incarceration, but we do find it in § 9-10-110(b), which would allow the court to commit the "accused person to jail until the lying-in expenses are paid with all costs." The predicate for such an action, however, according to § 9-10-110(a), is a judgment for lying-in costs "if required or claimed." Here we have no evidence that there was any

such claim or judgment, and there has been no attempt to hold that Mr. Davis has refused to pay any lying-in cost.

In Connecticut there were laws similar to § 9-10-110 and language in the paternity law such as that alluded to above from our *Dobson* decision making a paternity action seem like a criminal prosecution. The Supreme Court, in *Little* v. *Streater,* 452 U.S. 1 (1981), then referred to the Connecticut law as having "quasi-criminal" overtones, despite the State's characterization of it as "civil." The Supreme Court held that refusal of the State of Connecticut to pay the cost of blood-grouping tests sought by an indigent putative father denied his right to due process of law. The decision was a straightforward application of the Due Process Clause of the Fourteenth Amendment, applying the general criteria set out in *Mathews* v. *Eldridge,* 424 U.S. 319 (1976). It did not even suggest that the defendant was entitled to all or any of the procedural safeguards to which criminal defendants are especially entitled.

In Connecticut, the law was that a woman's testimony that a man was the father of her child established a *prima facie* case, and in order to prevail, the putative father was required to produce evidence other than, or in addition to, his own testimony to the contrary. The Supreme Court based its decision upon the evidentiary hurdle faced by a Connecticut paternity defendant and the need of such a defendant to have access to evidence other than his own testimony to show the accusations were untrue. The Supreme Court limited its decision to the "specific circumstances" extant in Connecticut.

Mr. Davis's argument ignores the statutory provision which would have entitled him to have present the expert who conducted the blood test upon filing of notice of such a request thirty days in advance of the trial. § 9-10-108(a)(3)(A). He states only that the statute would have required him to post a bond to pay the costs of the personal appearance of the expert. In the Court's first order of judgment it is specifically recited that the bond requirement was struck by the Court and that only notice was required. Mr. Davis does not contest that statement, and there is no evidence that any such notice was given.

Also ignored is § 9-17-316(f) which provides:

> In a proceeding under this chapter, a tribunal of this state may permit a party or witness residing in another state

> to be deposed or to testify by telephone, audiovisual means, or other electronic means at a designated tribunal or other location in that state. A tribunal of this state shall cooperate with tribunals of other states in designating an appropriate location for the deposition or testimony.

Mr. Davis apparently made no attempt to "confront" Ms. Sims by the method provided in the statute.

■ In these circumstances, where there has been (1) no attempt to utilize the provisions which were aimed by the drafters of the UIFSA at providing the best evidentiary safeguards permitted by the circumstances of interstate support litigation, (2) no attempt to defend due to a misguided conclusion concerning jurisdiction, and (3) no notice given to the Attorney General of the claimed unconstitutionality of the statute, *see* Ark. R. Civ. P. 24(c); Ark. Code Ann. § 16-111-106(b) (1987); *Arkansas Dept. of Human Serv. v. Heath*, 307 Ark. 147, 817 S.W.2d 885 (1991), we decline to give further consideration to the constitutional arguments made belatedly to the Chancellor and in this appeal.

Affirmed.

DUDLEY, GLAZE, and CORBIN, JJ., not participating.

Special Justices CLAIBOURNE W. PATTY, JR., LEROY AUTREY, and JAY SHELL join in the opinion.