737 So.2d 688 (1999)
STATE of Louisiana, In the Interest of T.L.R., Minor Child of T.R.
v.
R.W.T.
No. 98-CA-2274.
Supreme Court of Louisiana.
January 20, 1999.
*689 Richard Phillip Ieyoub, Atty. Gen., Paul Carmouche, District Atty., Brian Paul Joffrion, Shreveport, Laura Owen Wingate, Milton, Mary Simonton Cowles, Shreveport, Counsel for Applicant.
Ronald J. Miciotto, Shreveport, Counsel for Respondent.
KNOLL, Justice.[*]
The State of Louisiana filed an action in Caddo Parish Juvenile Court under the Uniform Interstate Family Support Act ("UIFSA") (La.Ch.Code art. 1301.1 et seq., formerly Uniform Reciprocal Enforcement of Support Act, "URESA"). The action was instituted to determine paternity and support of T.L.R.,[1] the minor child of T.R. While T.L.R. and T.R. were residents of California, the alleged biological father, R.W.T., was a resident of Caddo Parish. R.W.T. challenged the paternity and support action by attempting to prevent the introduction of the report on the blood test results. Defendant asserted that its objection to the filing of the report was timely, and that the relevant law was unconstitutional.

FACTS AND PROCEDURAL HISTORY
At the outset, T.R. filed a reciprocal petition on May 18, 1992, claiming that R.W.T. was the father of her minor son. A hearing was set for August 18, 1992, but the matter was reset since defendant was not present at the hearing. The matter was finally reset for May 19, 1994. Defendant was present at that hearing, wherein the court ordered T.L.R., T.R., and R.W.T. to submit to blood tests to determine paternity. When R.W.T. failed to comply, the State, through the Department of Social Services, Support Enforcement Services, petitioned the juvenile court to reopen the case and order defendant to show cause why the court should not hold him in contempt. Following a June 14, 1995 hearing on the matter, the court again ordered defendant to submit to blood testing. Defendant's subsequent failure to comply with the court's orders resulted in another hearing, held December 13, 1995. Defendant was found guilty of contempt, fined $25.00, and ordered to appear for blood testing on January 19, 1996, exactly one year and eight months after the court's first order to submit to blood testing.
Defendant's blood was drawn in Caddo Parish while T.L.R.'s and T.R.'s blood was drawn in California. Each blood sample *690 was sealed, packaged, labeled, and sent to Fairfax Identity Laboratories ("Fairfax") in Fairfax, Virginia for analysis. Fairfax test results indicated a 99.98% probability that defendant was T.L.R.'s biological father. A written report of the results and the sworn affidavit of the expert who supervised the tests were filed by mail in the juvenile court of Caddo parish.[2] On May 28, 1996, the Deputy Clerk of Court sent a certified letter to defendant, informing him of the results of the blood test and notifying him that they had been filed that day. Defendant's signature on the receipt for certified mail showed that defendant had received the notification of the filing of the results on June 3, 1996. On June 14, 1996, the State requested a hearing, which was set for July 10, 1996. Neither defendant nor his attorney was present at the hearing. However, on that day, defendant filed a motion to oppose the filing of the blood tests. Trial was set for October 15, 1997, but the defendant was not present. On the State's motion, the court reset the matter for November 19, 1997.
On November 12, 1997, more than seventeen months after defendant's notice, but just seven days before trial, defendant filed an exception of no cause of action, again attempting to prevent the admission of the blood test results. Defendant asserted that La.R.S. 9:397.3, which permits blood test results that are not timely challenged to be admitted as prima facie evidence of their contents, was unconstitutional. The statute makes clear that the prima facie admission of the results occurs only when the defendant "may summon and examine those making the original of the report as witnesses under cross-examination." La.R.S. 9:397.3(B)(2)(a). However, defendant complained that because he had no subpoena power over Fairfax, the out-of-state maker of the report, the statute deprived him of his right to cross-examine the witness.
The State filed its opposition to defendant's exception on November 18, 1997, urging that defendant's rights were not prejudiced. The State pointed out that in UIFSA cases, where out-of-state witnesses are involved, La.Ch.Code art. 1303.16(F) provides that witness testimony may be taken by means other than physical presence at trial. The opposition also averred that Dr. Daniel Demers, Fairfax, and the applicant recipient would be available to testify at trial pursuant to the UIFSA and Children's Code provisions.
The hearing officer denied defendant's opposition to the filing of the blood tests as untimely and denied defendant's exception of no cause of action, recommending that the challenged statute be found constitutional. The hearing officer noted that the defendant addressed subpoenas to the state; that, as provided by statute, witnesses were available for cross-examination by telephone; and that defendant had not attempted to subpoena the witnesses directly or to obtain their presence by any civil process.
Following defendant's exception to the findings and recommendations of the hearing officer, the juvenile court judge held a closed court hearing on December 10, 1997, more than five and one-half years since the institution of the reciprocal petition. Therein defendant complained that no credibility determinations could be made regarding T.R. or the Fairfax experts since telephone testimony made available by the state would not provide demeanor evidence of truthfulness or fabrication. Defendant urged the court to *691 find the statute unconstitutional based on due process violations resulting from defendant's alleged inability to confront the witness.
The State argued that the court need not consider the issues on the exception as there existed a presumption of paternity based on the defendant's failure to timely file an objection to the paternity test results. The State also noted that Congress had enacted the UIFSA, that Louisiana and twenty-seven other states had adopted it, that the UIFSA provided for telephone or other electronic testimony, and that the UIFSA had withstood repeated constitutional challenges. Thereafter, the State sought interim support during the pendency of any appeal.
The court requested information regarding the timeliness issue, asking if blood tests were performed, and when. Defendant requested that the court examine the record itself and do the calculations again. After a discussion, the court determined that it found no evidence in the file showing when the defendant had received statutory notice. The court then received the defendant's objection as timely filed, thereby overruling the hearing officer's finding to the contrary. The court denied interim support and declared that the UIFSA was unconstitutional insofar as it deprived the defendant the right to crossexamine the witness in court.
Subsequent to the juvenile court's ruling, the State filed a motion for a new trial on grounds that the ruling was contrary to the law and evidence, challenging the court's ruling on timeliness and constitutionality. During the February 6, 1998 hearing on the motion, the State urged the court to reconsider its ruling on grounds that the proof of notification that the court was unable to locate at the earlier proceeding was, in fact, part of the record at the time. The State explained that the court clerk found the missing notice after the December 19, 1997 proceeding, and that it had been placed in a different section of the file than where the clerk usually filed it. Therefore, the State urged that, as a matter of fact, the evidence was part of the record at the time of the hearing and, as a matter of law, the defendant's exception to the introduction of the blood test report was untimely.
The court denied the motion for new trial, and the state lodged an appeal. As the juvenile court declared a law to be unconstitutional, the court of appeal transferred the case on direct appeal to the Louisiana Supreme Court pursuant to La. Const. art. V, § 5(D). State, in the Interest of T.L.R., minor child of T.R. v. R.W.T., 31,254-JAC (La.App. 2 Cir. 8/19/98).

DISCUSSION OF LAW

Jurisdiction and Standard of Review
Pursuant to La. Const. art. 5, § 18, La. Ch.Code art. 302 was enacted, which provides for juvenile courts in Caddo Parish to have exclusive original jurisdiction over juvenile matters.[3] In matters where child support is at issue, a juvenile court judge has authority to appoint a hearing officer to act as fact-finder and to make recommendations based on those facts. La.R.S. 46:236.5(C)(1)[4]; La.Ch.Code art. *692 423.[5] Pursuant to Rule 26 of the First Judicial District, Caddo Parish, which implements the paternity and support process of La.R.S. 46:236.5, any party filing an exception to the findings of the hearing officer within seventy-two hours is entitled to a contradictory hearing before a juvenile court judge. 1st J.D.C. R. 26(5), (6). When, as here, an exception is filed, the defendant is entitled to de novo review of the findings of the hearing officer by the juvenile court judge. La.R.S. 46:236.5(C)(8). The court utilizes the record made by the hearing officer and may use its discretion in admitting additional evidence. La.R.S. 46:236.5(C); 1st J.D.C. R. 26(5), (6). The judgment of the juvenile court judge is a final, appealable Order. Id. When, as in the case sub judice, the judgment declares a law unconstitutional, the Louisiana Supreme Court reviews the judgment on direct appeal. La. Const. art. V, § 5(D).
The lower court's findings of fact will not be disturbed absent a showing of manifest error. The reviewing court must find that no reasonable basis for the factual finding exists, and that "the record establishes that the finding is clearly wrong." Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). In the matter sub judice, the judge of the juvenile court found that there was no evidence of record indicating the date of notification because he was unable to locate the proof of service "in the place where these are generally had." R. at 75.
The record reveals that the judge diligently searched the area in which he expected the proof of service to be located. However, the record also shows that the court was aware that documents are not always placed in the proper part of the file, and that the files in different types of cases heard by the court are assembled differently. The court did not accept the State's assertion that the proof of service was in the record at the relevant time, relying on its practice of having another inspect the file when a relevant document was not found.[6]
*693 We do not argue with the court's admirable practice. However, our thorough review of the record reveals that during the initial hearing on December 10, 1997, the court did not abide by its usual practice of seeking the assistance of another in locating the relevant document. At no time during the hearing did the court request anyone to examine the file. At no time during the hearing does the record show that anyone approached the bench to assist the judge in examining the file.[7] Moreover, there is no evidence that the proof of service was filed later. Additionally, the hearing officer's recommendation that the defendant's objection was untimely evidences her location and evaluation of the proof of service. The record as a whole does not support the findings of the juvenile court. Therefore, its findings must be vacated. See Stobart, supra. Instead, we find that the record supports the fact that the proof of service, embodied in the certificate of mailing, was part of the record at the time of the December 10, 1997 hearing.

Rebuttable Presumption of Paternity
Pursuant to La.R.S. 9:397.3, when the non-custodial parent receives statutory notice that blood test results have been filed, he has thirty days from the date of receipt of notice in which to challenge the results. A failure to timely challenge renders the report of the blood tests admitted into evidence as prima facie proof of its contents as long as there has been no procedural error and the non-custodial parent has an opportunity to cross-examine whoever made the report.[8] In the matter sub judice, the report was filed in juvenile court May 28, 1996. According to defendant's signature on the certificate of mailing, defendant received statutory notification on June 3, 1996. Defendant filed an objection on July 10, 1996. Defendant's objection was filed more than thirty days after receipt of notice. Therefore, it was not timely filed. La.R.S. 9:397.3(B). Defendant did not assert procedural error in his attempt to prevent the admission of the test results as prima facie proof of their contents. However, defendant challenged the admission on grounds that the statute was unconstitutional because it violated his due process rights to cross-examine state's witnesses.
*694 Defendant asserts that his inability to subpoena and cross-examine the out-of-state witness Fairfax prejudices his rights. Therefore, according to the defendant, La. R.S. 9:397.3(B)(2)(a), which provides that "the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination," is unconstitutional as applied to him.
La.R.S. 9:397.3 is an evidentiary procedural device that makes scientific evidence related to blood testing available. Patterson v. Johnson, 509 So.2d 35 (La.App. 1 Cir.1987). Under La.R.S. 9:397.3, admission of the report on the results is not conditioned on a requirement that any witness be called. Instead, the statute provides that any defendant who wishes to cross-examine the expert who prepared the report may do so. La.R.S. 9:397.3(B)(2)(a). But the statute gives no guidance as to how a defendant may cross-examine a witness who is out of state. The provisions of Louisiana's version of the UIFSA, codified in La.Ch.Code art. 1301.1 et seq., which specifically relate to support cases where non-custodial fathers and their minor children do not reside in the same state, accomplish that. Therefore, La.Ch.Code art. 1301.1 et seq. renders meaning to, and must be read in conjunction with, La.R.S. 9:397.3. The UIFSA makes specific provision for obtaining testimony from out-of-state witnesses. In support cases instituted in Louisiana, testimony from witnesses outside of Louisiana may be obtained by several alternative methods:
a tribunal of this state may permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means at a designated tribunal or other location in that state.
La.Ch.Code art. 1303.16(F). Other states have adopted the UIFSA in cooperation with their sister states to facilitate the taking of testimony for each other. Virginia, where Fairfax is located, statutorily requires cooperation in child support cases.[9]
Defendant complains that the telephone testimony made available by the state does not withstand constitutional scrutiny because it does not preserve demeanor evidence. However, La.Ch.Code art. 1303.16(F) permits several alternative methods of taking testimony besides testimony by telephone. Included is testimony taken by audiovisual or other electronic means. We note that testimony recorded audiovisually has been accepted as providing demeanor evidence, In re Application of CBS, Inc., 828 F.2d 958, 960 (2d Cir.1987), and that televised testimony, which would be permissible under La.Ch.Code art. 1303.16(F)'s "electronic means" provision, has been held constitutional. See, e.g., U.S. v. Gigante, 971 F.Supp. 755 (E.D.N.Y.1997) (criminal case). It has been recognized that the drafters of the UIFSA aimed at "providing the best evidentiary safeguards permitted by the circumstances of interstate support litigation." Davis v. Child Support Enforcement Unit, 326 Ark. 677, 933 S.W.2d 798, 800 (where state's version of the UISFA had the precise wording as La.Ch.Code art. 1303.16(F)).
Defendant does not assert that he attempted to make use of any statutorily permissible means of preserving demeanor evidence, but was prevented from doing *695 so. Nor does defendant assert that he requested the state to provide testimony by any of the alternative methods permissible under the statute. Moreover, defendant did not ask for and was not denied a continuance to pursue those alternate means of testimony that would have preserved the demeanor evidence. Thus, although defendant had several methods authorized under La.Ch.Code art. 1303.16(F) by which to effectuate the permissive cross-examination clause of La.R.S. 9:397.3(B)(2)(a), the record reveals that the defendant did not make use of any opportunity provided by law to cross-examine the witnesses. Under the circumstances, where defendant made no attempt to take advantage of the opportunities provided by law, we cannot say that defendant was deprived of an opportunity to cross-examine the witness; therefore, contrary to defendant's assertion, the statute is not unconstitutional as applied.[10]
No meritorious issues block the introduction of the report on the results of the blood tests. Therefore, the report is accepted as prima facie proof of its contents. La.R.S. 9:397.3(B)(2)(a). Results of scientific testing, such as those supplied by the report, provide persuasive and objective evidence of paternity. LeBlanc v. Le-Blanc, 497 So.2d 1361 (La.1986). Pursuant to La.R.S. 9:397.3(B)(2)(b), a reported probability of 99.9% establishes a presumption of paternity.[11] In the matter sub judice, the blood test report reveals a 99.98% probability that defendant is the father of the minor T.L.R. In her sworn affidavit, T.R. attests that defendant has admitted that he is the father of T.L.R. and that defendant had offered to pay for an abortion or medical expenses. Defendant did not contradict her testimony. Defendant did not deny having a sexual relationship with T.R., and introduced no evidence rebutting the presumption of paternity. Therefore, the record establishes proof of defendant's paternity.

DECREE
We observe that this case has been pending for some time, primarily because of the defendant's dilatory tactics. This Court has recognized that, to the extent practicable, any and all proceedings affecting children should be given expeditious treatment. La.S.Ct. Rules XXXII XXXIV. (Effective Feb. 1, 1999.) The policy behind the rule, acknowledging the special needs of children, has application to all courts.
For the reasons discussed above, the judgment of the juvenile court is vacated and set aside. This case is remanded to the juvenile court to consider the sole issue of support on an expedited basis with preference and priority.
*696 JUDGMENT VACATED; REMANDED TO JUVENILE COURT FOR EXPEDITIOUS TREATMENT.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] T.L.R. was born on October 5, 1988.
[2] Affidavit forms were supplied by Fairfax to those drawing blood in order to establish that the blood tested was drawn from the person identified. The proper completion and filing of the forms established the chain of custody requirements of La.R.S. 9:397.2. Technicians who drew blood from defendant in Louisiana and T.L.R. and T.R. in California each attested that they had packaged, sealed, and sent to Fairfax the blood of the person identified on the package. In separate affidavits, Fairfax employees attested that, upon receipt, the packages containing the blood samples of defendant, T.L.R., and T.R. had shown no evidence of having been opened.
[3] La.Ch.Code art. 302 provides, in pertinent part:

Juvenile jurisdiction shall be exercised as follows:
(1) Special juvenile courts created by law for Caddo, Orleans, Jefferson, and East Baton Rouge Parishes shall have exclusive original juvenile jurisdiction, and any other jurisdiction conferred by the statute creating them, in the parish or parishes for which they are created. Judges of these courts shall exercise their juvenile jurisdiction according to the provisions of this Code.
[4] La.R.S. 46:236.5 provides for the "[e]xpedited process for establishment of paternity and establishment or enforcement of support." The UIFSA, La.Ch.Code art. 1301.1 et seq. works in conjunction with Chapter 3, Part II, Subpart A, Aid to Needy Families, of which La.R.S. 46:236.5 is a part, when the child and non-custodial parent do not reside in the same state.
[5] La.Ch.Code art. 423 provides:

A. The judge or judges of the court may appoint one or more hearing officers to hear child support and support related matters.
B. The hearing officer shall act as a finder of fact and shall make recommendations to the court.
The language is essentially the same as La. R.S. 46:236.5(C), which provides in pertinent part:
(1) The judge or judges of the appropriate court or courts for the establishment of paternity or the establishment and enforcement of support shall appoint one or more hearing officers to hear paternity, support, and support-related matters.
. . .
(3) The hearing officer shall act as a finder of fact and shall make recommendations to the court.
[6] The following interchange occurred at the hearing on the motion for the new trial:

Court: The Court, again, diligently searched the file at the time in the place where these are generally had and searched over and over. In fact, I let counsel look in the file to see if you could locate
State: I was not invited to look in the file, Your Honor. It was the State's position that that evidence was in the file, and it was.
Court: Well, the Court was satisfied at the timeI'm notif it was, Mr. Joffrion, the Court was not in a position to rule because it didn't see it. It didn't have it. The Court did everything in its power. I looked, I had the clerk look, I don't know whether I invited you to look or not but I
State: The Court did not have the clerk look.
. . .
State: Your Honor, the proof is a matter of record, and the Court can take notice of its record.
Court: And the Court did.
. . .
Court: ... the Court is satisfied that the file was inspected and inspected thoroughly. And the information involvedit is my practice that whenever there is not a document found that someone else, the clerk or other persons, will look in the file because I don't trust my procedure because sometimes they're filed to the left and sometimes their [sic] filed to the right. So we've allowed others, or I do ...
State: Which is the reason that we're before the Court today to give the Court another opportunity to look at the record. That is the court's record and that was the court's record. I think the evidence, the record will show that that was filed by the clerk in that record before the last hearing....
Court: Again, the Court searched the file diligently at the time of the hearing, did not see the return. If memory serves me correctly, we can check the record, I allowed the clerk to search the file also to see if, in fact, the service was there. Because it is the Court's practice, it is my practice, always to not rely on my looking through the file alone, that someone else inspect the file to cover something that I may have missed because they are set up here differently in different cases that we rotate.
The file was inspected. It was not present at that particular time according to the inspection of my inspection and the inspection of the clerk. Now, if it had come in later, which there is a return here showing the dates that is certified
State: Your Honor, the clerk's record would certainly reflect when that was filed.
Court: Sir, it was not in the file at the time of the hearing.
R. at 75-77. (Emphasis added.) (In place of names, "Court" and "State" were substituted.)
[7] There is evidence that the defense counsel approached the bench to show the judge a document in defense counsel's file. The document was the letter defendant had received notifying him of the blood test results and of his right to file an objection within 30 days.
[8] La.R.S. 9:397.3(B) provides, in pertinent part:

(2)(a) If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
[9] Virginia's version of the UIFSA is embodied in Title 20, Chapter 5.3 of the Code of Virginia. The Commonwealth acts cooperatively "as a responding tribunal for proceedings initiated in another state." VA. CODE ANN. § 20-88.37 (Michie 1994). Moreover, Virginia mandates cooperation with out-of-state proceedings involving testimony of Virginia witnesses:

Whenever any mandate, writ or commission is issued out of any court of record in any other state, territory, district or foreign jurisdiction, or whenever upon notice or agreement it is required to take the testimony of a witness ... in this Commonwealth, witnesses may be compelled to appear and testify.
VA. CODE ANN. § 8.01-411 (Michie 1986).
[10] We note for the record some confusion regarding which law was declared unconstitutional. The juvenile court judge declared the UIFSA unconstitutional, and the court of appeal, when it transferred the case to the Louisiana Supreme Court on direct appeal, stated that the law at issue was La.Ch.Code art. 1303.16(F). However, the specific law challenged by the defendant was La.R.S. 9:327.3.

In matters where children are concerned, consideration of their best interest includes expeditious treatment in courts. E.g., State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445 (adoption); Kelly v. Gervais, 567 So.2d 593 (La.1990) (custody). In paternity and support cases where Louisiana residents are in need, the Louisiana Legislature has also recognized the necessity for expeditious treatment. La.R.S. 46:236.5. In this case, where the support of a child is at issue, and where the ultimate issue of constitutionality was deemed premature, expeditious treatment may be accomplished, in part, by correcting the record to reflect that the constitutionality of La.R.S. 9:327.3 was at issue. See La.Code C.P. art. 2132; Dickerson v. Krogers, Inc, 504 So.2d 1008 (La.App.1987)(party's name corrected by appellate court). Therefore, this Court hereby notes the correction.
[11] La.R.S. 9:327.3(B)(2)(b)provides:

(b) A certified report of blood or tissue sampling which indicates by a ninety-nine and nine-tenths percentage point threshold probability that the alleged father is the father of the child creates a rebuttable presumption of paternity.