**Affirmed and Opinion Filed November 6, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-12-00064-CV
_____

**ROLAND SCOTT ARNELL, Appellant**
**V.**
**MONIKA ELIZABETH ARNELL, Appellee**

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-09-09155**

## OPINION

Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice FitzGerald

Appellant Roland Scott Arnell[1] appeals the trial court's Order on Petition for Registration and Enforcement of Support Orders and Order for Turnover in favor of his former wife, Monika Elizabeth Arnell. In the proceedings below, Monika sought to enforce support orders from a divorce proceeding between the parties in Geneva, Switzerland. We affirm the trial court's order.

BACKGROUND

Monika and Scott were married in 1982 in Mexico. Their three children were born in 1984, 1986, and 1989. At the time of their divorce in 2002, the parties were living in Switzerland. The parties' divorce proceedings were filed in Switzerland, and orders were

_____

[1] The parties refer to appellant as "Scott," as do we.

entered by Swiss courts regarding the custody and support of the children as well as spousal support for Monika. The Swiss courts also granted the parties' divorce, but deferred a decision on the division of some of the parties' property. Scott did not make all of the support payments required by the Swiss decrees. Monika filed a petition for registration and enforcement of the Swiss support orders in the trial court.[2]

At the center of the parties' controversy is real property located in Dallas, Texas. In an affidavit filed with the trial court in support of a motion for summary judgment, Scott testified:

> On or about March 17, 1989, Monika Elizabeth Arnell ("Monika Arnell"), then my wife, and I purchased and became owners of a tract of real property and the improvements thereon, being a single family home located at 16507 Dundrennan Lane, Dallas County, Texas 75248 (the "Dallas Property"). A true and correct copy of the recorded Warranty Deed is attached hereto and incorporated herein by reference as Exhibit A. The Dallas Property has not been sold or transferred of record since it was purchased by Monika Arnell and me.

Similarly, Monika alleged in her petition that she and Scott own the Dallas property. Neither party disputes that the Swiss courts deferred a decision on the disposition of the Dallas property.[3]

In the trial court, Monika sought a turnover order regarding the Dallas property to offset a portion of the amounts due under the Swiss orders. The case was tried to the court on June 28, 2011. The court heard evidence that the Dallas property was leased to tenants, and that the tenants pay rent to Sheldon Property Management, the company that has managed the property since 2000. A representative of Sheldon Property Management testified about the payment of proceeds from the rental of the property both before and after the parties' divorce. During

---

[2] In a previous appeal, a default judgment enforcing these orders against Scott was reversed because there was no evidence that Monika served Scott with process as required by the Texas Rules of Civil Procedure. *See Arnell v. Arnell*, 281 S.W.3d 549, 552 (Tex. App.—El Paso 2008, no pet.). Neither party raises any issues regarding this previous proceeding.

[3] The Swiss court's orders are in French. Although the translation filed by Monika is not entirely clear, it appears that Scott asked the Swiss court to divide the Dallas property between the three Arnell children, but the court declined to do so. In any event, the parties do not dispute that the Swiss court made no disposition of the Dallas property. After submission of this case on oral argument, we ordered the parties to provide supplemental briefing on the jurisdictional issues, including whether the Swiss courts had made a final disposition of the Dallas property. The parties complied, but neither party's brief reflects that any further property division or liquidation has been ordered by the Swiss courts.

–2

certain periods of time, rental proceeds were paid only to Monika. Since 2009, the net proceeds have been paid into an escrow account pending resolution of the disputes between Monika and Scott. Neither Monika nor Scott appeared in person at trial, but Scott testified by telephone about the amounts due under the Swiss orders and offsets he claimed.

On October 18, 2011, the trial court signed its order registering and enforcing the Swiss orders. In its order, the trial court registered five Swiss support orders dated May 16, 2002, November 21, 2002, March 8, 2003, June 20, 2003, and October 13, 2003. The trial court found that Scott was "entitled to and should receive three offsets and credits" against the amounts due under the support orders. These three offsets were: (1) payments Scott made to a Swiss agency known as "SCARPA"; (2) half of the rental payments for the Dallas property that were distributed only to Monika between February 2007 and October 2008; and (3) certain payments made directly to third parties in lieu of spousal support, for which the parties agreed to give credit to Scott. After these offsets were made, the trial court granted judgment to Monika for $375,606.04,[4] plus interest and attorney's fees. The trial court also entered a turnover order requiring Scott to turn over his interest in the Dallas property to Sheldon Property Management as receiver. At Scott's request, the trial court made findings of fact and conclusions of law on January 31, 2012. This appeal followed.

**JURISDICTION OF TRIAL COURT
TO REGISTER AND ENFORCE CHILD SUPPORT ORDERS**

In his first issue, Scott contends that the trial court had no jurisdiction to enter its order because the Swiss courts have yet to decide the ownership of the Dallas property. We review this issue de novo. *Office of Attorney Gen. v. Long*, 401 S.W.3d 911, 912 (Tex. App.—Houston

---

[4] Although the amounts stated in the five support orders were in Swiss francs, the trial court converted the amounts "to the equivalent amount in dollars" as required by section 159.305(f) of the Family Code. TEX. FAM. CODE ANN. § 159.305(f) (West 2008).

[14th Dist.] 2013, no pet.) (because jurisdiction is question of law, court of appeals' review is de novo).

Monika's original petition was filed under the Uniform Interstate Family Support Act (UIFSA). *See* TEX. FAM. CODE ANN. §§ 159.001–159.901 (West 2008 & West Supp. 2012). Under section 159.601 of UIFSA, a "support order" issued by a tribunal of another state[5] may be registered in Texas for enforcement. TEX. FAM. CODE ANN. § 159.601. A "support order" is defined in UIFSA as "a judgment, decree, order, or directive, *whether temporary, final, or subject to modification,* issued by a tribunal for the benefit of a child, a spouse, or a former spouse that provides for monetary support, health care, arrearages, or reimbursement and may include related costs and fees, interest, income withholding, attorney's fees, and other relief." TEX. FAM. CODE ANN. § 159.102(23) (emphasis added). Monika filed five orders for registration. *See* TEX. FAM. CODE ANN. § 159.602 (procedure to register orders for enforcement).

At the outset, we recognize that the Swiss courts that issued the five support orders have "continuing, exclusive jurisdiction to modify" those orders under UIFSA. *See* TEX. FAM. CODE ANN. § 159.205 (addressing "continuing, exclusive jurisdiction" to modify support order). But under UIFSA, the trial court was required to register and enforce the orders, as discussed in more detail below. *See* TEX. FAM. CODE ANN. § 159.607 (if contesting party does not establish statutory defense to validity or enforcement of order, registering tribunal "shall" issue order confirming support order); TEX. FAM. CODE ANN. § 159.603(c) (tribunal of this state "shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction"); *see also Thompson v. Thompson*, 893 S.W.2d 301, 302 (Tex. App.—Houston [1st

---

[5] Neither party disputes that Switzerland is considered as to be a "state" for purposes of UIFSA. *See* TEX. FAM. CODE ANN. § 159.102(21) (defining "state" to include a foreign country that has been declared to be a foreign reciprocating state or that meets other requirements of subsection).

–4

Dist.] 1995, no writ) (under UIFSA, Texas court had no jurisdiction to modify Indiana child support order; Texas could recognize and enforce order, but Indiana court had continuing, exclusive jurisdiction to modify) (interpreting earlier version of UIFSA); *accord, In re T.L.*, 316 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (Louisiana court could enforce, but not modify, Texas support order where Texas had continuing, exclusive jurisdiction over support order).

Scott contested the validity and enforcement of the orders, as permitted by sections 159.606 and 159.607 of UIFSA. He objected that the orders were not in the English language, and no translation was provided.[6] He requested a hearing to prove one or more of the defenses provided in section 159.607. For two of the defenses, Scott made specific complaints. *See* TEX. FAM. CODE ANN. § 159.607(a)(3) and (4). He alleged that "the orders have been vacated, suspended, or modified by a later order" or "the issuing tribunal has stayed the orders pending appeal," and explained:

> [iii.] [T]he orders are not final as to disposition of the subject Texas property because the divorce proceedings in Switzerland between the parties are not complete and that foreign tribunal retains exclusive jurisdiction over the subject matter of the case. The title and disposition of the subject Texas property as between the parties has not be[en] determined by the Swiss tribunal, and such issues are believed to be open and subject to further adjudication pursuant to a "liquidation du Regime Matrimonial" proceeding.
>
> iv. the issuing tribunal has stayed the orders pending appeal and/or those orders are not final as to the ownership rights regarding the subject Texas property while the divorce between the parties remains unfinished in Switzerland.

Scott also requested an accounting for rents received by Monika for the Dallas property.

---

[6] The trial court sustained Scott's objection regarding the lack of translation, and found that the orders "must be translated to be registered or domesticated." Monika filed translations of the five orders with the trial court, to which Scott did not object.

Under section 159.607 of UIFSA, Scott bore the burden of proving the defenses he asserted to registration of the Swiss orders. *See* TEX. FAM. CODE ANN. § 159.607(a). We conclude Scott did not establish that the orders had been "vacated, suspended, or modified by a later order," or that "the issuing tribunal has stayed the order pending appeal." *See id.*, § 159.607(a)(3), (4). Although it is undisputed that the liquidation of the Dallas property was deferred by the Swiss court, the court's reason for doing so was to allow its orders regarding custody, visitation, and support for the children to become final without further delay. The court stated that the divorce was not dependent upon the liquidation of the parties' property, and that some liquidation issues would be "reserved for later," "in order to put a faster end to the spousal conflict of the ARNELL spouses, in the predominant interest of their three children according to the pressing recommendations of the psychological expert."[7] And UIFSA does not require that a support order be final to be registered. The definition of "support order" expressly includes orders that are "temporary, final, or subject to modification." *Id.*, § 159.102(23).

Under UIFSA, Swiss law governs "the nature, extent, amount, and duration of current payments" under a registered support order, as well as the computation and payment of arrearages, the accrual of interest on the arrearages, and the existence and satisfaction of other obligations under the support order. TEX. FAM. CODE ANN. § 159.604(a). Texas law applies regarding enforcement and collection of arrearages. *Id.*, § 159.604(c). Scott argues that under Swiss law, the Swiss courts have "continuing and exclusive jurisdiction" regarding ownership and division of the Dallas property. He argues that the trial court had "no jurisdiction to usurp

---

[7] The Swiss divorce decree of May 16, 2002, references the "significant parental conflict" between the parties and the detrimental effect of the conflict on the children. The court also described "incessant conflicts between the ARNELL parents," "serious relationship conflict between the ARNELL spouses, in which the children had become the center," and the "tension reigning between the parents." A "psychological expert" appointed by the court "remarked insistently that the psychological state of the three ARNELL children was worrisome, due to the parental conflict, reason for which he encouraged the parties to put an end to this conflict and disengage from the judicial and judiciary processes." The expert "confirmed that the ARNELL children were gravely destabilized psychologically by the marital dispute and the length of the current divorce procedure."

the Swiss Tribunal's jurisdiction over that pending question in the parties' Geneva divorce proceeding."

In support of a motion for summary judgment, Scott offered a statement[8] by his Swiss attorney, Philippe Ehrenstrom, regarding the Swiss proceedings and applicable Swiss law. After the trial court denied Scott's motion for summary judgment, Scott filed a "renewed request for the court to take judicial notice of foreign law," citing Ehrenstrom's statement "setting forth and briefing relevant foreign law of the jurisdiction of the tribunal issuing the orders which are the subject of the relief sought by Petitioner herein."

Ehrenstrom's statement explained that the parties were married "under the Marital Property regime of 'Separation of Property' under Swiss law." Ehrenstrom stated that the Separation of Property regime was governed by articles 247–251 of the Swiss Civil Code. In paragraphs 6 and 7 of his statement, Ehrenstrom first stated that marital property regimes "are dissolved at the time of divorce and liquidated," and that "the dissolution and liquidation of a Marital Property regime is to take place within the jurisdiction of the court which has ruled upon the divorce." But in the next paragraphs, he explained that it was a matter of debate under Swiss law "whether the specific Marital Property regime of 'Separation of Property' has to be liquidated after its dissolution by divorce." Because Swiss law already provides that each spouse manages his or her own property and is responsible for his or her own debts under a separation of property regime, some Swiss authorities have argued that liquidation is not necessary. But Ehrenstrom cited authorities for the proposition that liquidation is required, because spouses will

---

[8] Ehrenstrom explained that Swiss law does not provide for affidavits or notarized statements, but stated, "I do swear by my signature on this letter that the facts and legal issues set forth above are true and correct to the best of my understanding of the facts and legal issues involved in the present case under Swiss law." Under the Texas Rules of Evidence, a court "in determining the law of a foreign nation, may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence, including but not limited to affidavits, testimony, briefs, and treatises." *See* TEX. R. EVID. 203.

have acquired property, debts, contractual arrangements, and other obligations during the marriage that require allocation, reimbursement, or other disposition at the time of divorce.[9]

Ehrenstrom then explained that the Swiss court granting the Arnells' divorce reserved the liquidation of the marital property regime "until later." He opined that "[r]ights, debts, claims, etc. arising from the marriage between Roland Scott Arnell and Monika Arnell have therefore not been comprehensively settled by the Swiss court which ruled over the divorce, even if said divorce judgment does not explicitly rule on the issue of the co-ownership of the [Dallas property] or on if and how such property is to be divided." He concluded that "the full and exact measure of each spouse[s] rights, claims, debts, etc. (if any) arising from the liquidation of the Marital Property regime of "Separation of Property" has not been properly determined or settled by a Swiss court of law."

Ehrenstrom's explanation of Swiss law, however, does not establish either of the statutory defenses Scott sought to prove. Although the Swiss court may later determine ownership and division of the Dallas property, the deferral of that decision does not in any way vacate, suspend, modify, or stay Scott's child and spousal support obligations. *See* TEX. FAM. CODE ANN. § 159.607(a) (listing defenses). In fact, the Swiss court explicitly deferred a disposition of the parties' property so that the support obligations and other rulings for the benefit of the children could commence without further delay. As the Civil Chamber of the Court of Justice opinion stated, "Otherwise and above all, the predominant interests of the Arnell children requires to put an end to the current procedure as quickly as possible, whatever the

---

[9] Ehrenstrom also explained that under article 248 of the Swiss Code, in a separation of property regime, whoever alleges that a specific asset belongs to one or the other spouse shall be required to prove it. If such evidence cannot be provided, co-ownership of the spouses shall be presumed. *See* CODE CIVIL [CC] [CIVIL CODE] Dec. 10, 1907, art. 248 (Switz.) (non-official English translation at http://www.admin.ch/ch/e/rs/2/210.en.pdf).

financial interests cited by the parties may be." Order, June 20, 2003.[10] An examination of the five orders submitted to the trial court for registration reveals careful and exhaustive consideration by the Swiss courts over a period of years all of the parties' contentions and concerns regarding custody, visitation, and support of the children. Registration of these orders for enforcement furthers the Swiss courts' resolution of these issues.

Under subsection (c) of section 159.607, the trial court "*shall* issue an order confirming the order" if the "contesting party does not establish a defense under subsection (a) to the validity or enforcement of the order." TEX. FAM. CODE ANN. § 159.607(c) (emphasis added). We conclude that the trial court was required to register the Swiss orders because Scott did not prove the defenses he asserted. *Id.* The trial court did not err in registering the orders.

Scott also complains that the trial court usurped the jurisdiction of the Swiss courts by enforcing the Swiss support orders. As noted above, Texas law applies to issues of enforcement and collection. TEX. FAM. CODE ANN. § 159.604(c) ("A responding tribunal in this state shall apply the procedures and remedies of this state to enforce current support and collect arrearages and interest due on a support order of another state registered in this state."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (West 2008) (collection of judgment through court proceeding), and *In re C.H.C.*, 290 S.W.3d 929, 931 (Tex. App.—Dallas 2009, no pet.) (discussing application of turnover statute). But Scott does not complain of any procedural error in the application of the Texas turnover statute. Rather, his complaint is that a Texas court decided the division of the Dallas property when the Swiss courts had exclusive jurisdiction to do so.

---

[10] This order is described in the trial court's judgment as "Court of Justice Civil Chamber Ruling through regular procedure dated June 20, 2003, having number C/16606/1998, CJC/711/03."

As discussed above, it is undisputed that the Swiss courts "reserve[d] the liquidation of the couple's assets belonging to Monika and Roland Scott ARNELL" including the Dallas property, "for later," and there is nothing in the record showing that the Swiss courts have made any disposition of the Dallas property. And only the Swiss courts may modify the support orders. *See* TEX. FAM. CODE ANN. §§ 159.205; 159.603(c). But the trial court's order does not in any way modify the support obligations set forth in the Swiss orders. Instead, it enforces those obligations as determined by the Swiss courts.[11]

UIFSA provides that a Texas court must "recognize and enforce" a registered support order if the issuing tribunal had jurisdiction. TEX. FAM. CODE ANN. § 159.603(c) (Texas court "*shall* recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction") (emphasis added). In addition, a Texas court may "order an obligor to comply with a support order and specify the amount and the manner of compliance." TEX. FAM. CODE ANN. § 159.305(b) (2); *see Kendall v. Kendall*, 340 S.W.3d 483, 510 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (when enforcing obligation in New York judgment under UIFSA, Texas court could order lump sum payment). We conclude that the trial court had jurisdiction under UIFSA to register and enforce the Swiss support orders. We overrule Scott's first issue.

ADMISSION OF AFFIDAVIT

Scott's second and third issues complain about the affidavit Monika submitted with her petition to register and enforce the Swiss orders. In his second issue, Scott argues that the admission of the affidavit into evidence constituted harmful error. We review the trial court's rulings on the admission or exclusion of evidence for abuse of discretion. *Mitchell v. Bank of*

---

[11] We also note that the trial court's enforcement of the support orders does not prevent the Swiss courts from deciding on a different division of the Dallas property than the equal ownership reflected in the trial court's order. If the Swiss courts decide that Scott should receive a greater or lesser percentage, then the court may make adjustments to the comprehensive settlement of the "rights, debts, claims, etc. arising from the marriage" that Ehrenstrom described.

*Am., N.A.,* 156 S.W.3d 622, 626 (Tex. App.—Dallas 2004, pet. denied). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Id.* A reviewing court will not reverse an erroneous ruling on the exclusion of evidence unless the ruling probably caused the rendition of an improper judgment. *Id.* We make this determination by an examination of the entire record. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995).

UIFSA includes special rules of evidence and procedure. *See* TEX. FAM. CODE ANN. § 159.316. UIFSA expressly provides that "the physical presence of a nonresident party who is an individual in a tribunal in this state is not required for the establishment, enforcement, or modification of a support order . . . ." TEX. FAM. CODE ANN. § 159.316(a). UIFSA also permits the use of affidavits: "An affidavit . . . that would not be under the hearsay rule if given in person, is admissible in evidence if given under penalty of perjury by a party or witness residing in another state." *Id.*, § 159.316(b). The purpose of this provision was to "eliminate as many potential hearsay problems as possible in interstate litigation because usually the out-of-state party . . . do[es] not appear in person at the hearing." *Attorney Gen. v. Litten*, 999 S.W.2d 74, 89 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (quoting Sampson & Tindall, Texas Family Code Ann. § 159.316, Commissioner's comment to UIFSA Section 316 at 557).

Scott's second issue includes two separate complaints. First, he argues that the trial court's admission of the affidavit created surprise and prejudice to him. This complaint arises from his contention that the trial date was chosen so that Monika would be available to testify. He argues that he intended to rely on Monika's testimony to prove offsets to the amount of support payments due and to establish that Monika had failed to deliver property awarded to Scott by the Swiss courts. Because Monika's affidavit addressed neither of these issues, and because his trial preparation was based on his understanding that Monika would be present at

trial and available for cross-examination, Scott alleges that the trial court erred by admitting the affidavit. Scott also asserts that Monika was required to testify by telephone under section 159.316(f). Subsection (f) provides that "a tribunal of this state shall permit a party or witness residing in another state to be deposed or to testify by telephone . . . ."

Second, Scott argues that even under the standards of section 159.316, the affidavit was not admissible. He complains that Monika's affidavit did not contain the certified records of child support payments referenced in section 159.316(c), and that Monika was not qualified as an expert witness to testify about the "content, purpose, and effect of orders entered by a Swiss tribunal." He also contends that her testimony of the amounts due and owing under the Swiss orders constituted inadmissible legal opinions.

We conclude that the trial court did not err by admitting Monika's affidavit into evidence. Once the Swiss orders were translated, the orders themselves revealed the amounts Scott was ordered to pay and the relevant dates. The orders also reveal the dates the rulings were made, and whether the rulings were made by a trial court or were the result of an appeal. Scott's objections to Monika's affidavit did not extend to testimony that was consistent with the Swiss courts' orders. And the trial court sustained Scott's objections to statements in the affidavit "that are inconsistent with what the order says."

Scott could not have been surprised by the substance of the testimony in Monika's affidavit, as the affidavit was filed with her original petition and had been on file for two years prior to the trial date. While he contends that he was surprised by the inability to cross-examine Monika, he was able to testify by telephone himself as to amounts he had paid and other offsets he claimed. He did not dispute that he owed support under the Swiss court orders, and he calculated the amounts due under the orders on a spreadsheet that was admitted into evidence when he testified. He testified that his calculations were made "by actually calculating the

amount due according to the various stages of the decisions," similar to Monika's affidavit testimony. He testified that he had made payments pursuant to the orders, including payments to a Swiss child support collection agency called "SCARPA." But he conceded that he did not pay the full amounts he calculated to be due under the orders.

As we have noted, Monika's physical presence at trial was not required for enforcement of the support orders. TEX. FAM. CODE ANN. § 159.316(a). Monika's testimony regarding the child support orders and the amounts due "would not be under the hearsay rule if given in person," and therefore was admissible by affidavit. TEX. FAM. CODE ANN. § 159.316(b). Reviewing the record as a whole, we conclude that the admission of Monika's affidavit into evidence under Family Code section 159.316 was not error, and in any event did not cause the rendition of an improper judgment. *See City of Brownsville*, 897 S.W.2d at 755. We overrule Scott's second issue.

In his third issue, Scott argues that the section of UIFSA permitting use of affidavits at trial violates his constitutional right to confront and cross-examine witnesses. We presume that a statute is constitutional. *Martinez v. Dallas Cent. Appraisal Dist.*, 339 S.W.3d 184, 193–94 (Tex. App.—Dallas 2011, no pet.). Scott bears the burden of demonstrating that section 159.316 fails to meet constitutional requirements. *Id.* at 194.

In support of his argument that Family Code section 159.316 is unconstitutional, Scott cites *Davidson v. Great National Life Insurance Co.*, 737 S.W.2d 312, 314 (Tex. 1987). In *Davidson*, the court recognized that "[c]ross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth." *Id.* The court stated that "[d]ue process requires an opportunity to confront and cross-examine witnesses." *Id.*[12] Even under *Davidson*, however,

---

[12] Scott also cites *In re S.P.*, 168 S.W.3d 197, 205–06 (Tex. App.—Dallas 2005, no pet.), which includes a discussion of due process in the context of termination of parental rights. As Scott conceded, however, we did "not reach the constitutional issue of whether the right of confrontation or to cross-examine applies in an involuntary termination of parental rights case." *Id.* at 207.

–13

reversal is proper only when the trial court's error in limiting cross-examination "was reasonably calculated to cause and did cause rendition of an improper judgment." *Davidson*, 737 S.W.2d at 314 (concluding that error in limiting cross-examination was harmless under this standard).

The parties did not cite any Texas cases discussing the constitutionality of section 159.316, and we have found none. But courts in other jurisdictions have considered and rejected similar constitutional challenges to UIFSA. *See, e.g., Louisiana ex rel. T.L.R. v. R.W.T.*, 737 So.2d 688, 694–95 (La. 1999) (where defendant failed to use any of alternatives provided in statute for cross-examination, statute not unconstitutional as applied); *Davis v. Child Support Enforcement Unit*, 326 Ark. 677, 680–81, 933 S.W.2d 798, 799–800 (1996) (court would not consider constitutionality of statute where appellant made no attempt to "confront" witness by methods provided in UIFSA); *People ex rel. Orange County v. M.A.S.*, 962 P.2d 339, 343 (Colo. App. 1998) (no denial of right to cross-examine by admission of interrogatory answers under UIFSA where evidence otherwise admissible and respondent expressly waived right to have mother testify by telephone). As stated by the court in *R.W.T.*, "[i]t has been recognized that the drafters of the UIFSA aimed at 'providing the best evidentiary safeguards permitted by the circumstances of interstate support litigation.'" 737 S.2d at 694 (quoting *Davis*, 326 Ark. at 681, 933 S.W.2d at 800).

As noted, subsection (f) of section 159.316 permits deposition or trial testimony by "telephone, audiovisual means, or other electronic means." In addition, subsection (f) provides that "[a] tribunal of this state shall cooperate with a tribunal of another state in designating an appropriate location for the deposition or testimony." TEX. FAM. CODE ANN. § 159.316(f). Here, the trial court noted, "[c]ertainly, the statute does seem to provide for testimony over the telephone," and stated, "[c]ertainly, [witnesses] can testify by telephone, according to what I see here, if that's what you want to do." The court adjourned the morning's proceedings to allow the

parties to contact witnesses to testify by telephone in the afternoon. The record reflects that Scott testified by telephone. The record does not reflect that attempts were made to reach Monika by telephone, or that Scott attempted to exercise other alternatives, such as a deposition by telephone prior to trial, to confront and cross-examine Monika. And as we have explained, the Swiss orders themselves as well as Scott's own testimony provided evidence of the amounts due and the amounts Scott had paid. As in *R.W.T.*, *Davis*, and *M.A.S.*, we reject Scott's challenge to the constitutionality of section 159.316. We overrule Scott's third issue.

## OFFSETS

In his fourth issue, Scott complains that the trial court failed to offset the judgment by an amount equivalent to the market value of property awarded to him by the Swiss courts but withheld by Monika, and by "the amount of other payments made to and received by" Monika. Scott relies on a paragraph in the June, 2003 order registered by the trial court, which "authorizes Ronald Scott ARNELL to take his moveable goods, remaining in the past family household and over which his property rights have been expressly admitted by Monika ARNELL . . . ." We review the trial court's decision for abuse of discretion. *See Beck v. Walker*, 154 S.W.3d 895, 901–02 (Tex. App.—Dallas 2005, no pet.) (most appealable issues in family law case, including trial court's confirmation of support arrearages, are reviewed under abuse of discretion standard).

At trial, Scott testified that he had made an inventory of the items he claims under the order, assigned a value to each, and submitted the inventory to the office of Port Swiss, a government agency "that handles claims and enforces claims." Scott testified that the Port Swiss issued a "commandment to pay" to Monika, and he attempted to introduce the commandment into evidence at trial. The trial court sustained Monika's objection to the exhibit, however, because it had not been translated from the French language. *See* TEX. R. EVID. 1009 (translation of foreign language document shall be admissible upon affidavit of qualified translator setting

–15

forth translator's qualifications and certifying that translation is fair and accurate); *see also* TEX. R. EVID. 203 (party intending to raise issue concerning law of foreign country shall give notice and provide translation).

In addition, as noted above, Swiss law governs the amount of support payments due, the computation and payment of arrearages, and the existence and satisfaction of other obligations under the support order. TEX. FAM. CODE ANN. § 159.604(a). Scott did not provide any citation to Swiss law that would permit an offset for the value of the personal property, even if proven, against the amounts of support he owes. Ehrenstrom's statement, the only explanation of Swiss law offered by Scott, does not address the issue. Without applicable law and admissible evidence to support the offsets claimed by Scott, the trial court did not err by not including those offsets in its order. *See* TEX. FAM. CODE ANN. § 159.607(c) (if contesting party does not establish defense under subsection (a) to validity or enforcement of order, registering tribunal shall issue order confirming support order).

Scott also argues that trial court erred by granting him an offset for a fifty percent ownership interest in the Dallas property, because this determination usurps the jurisdiction of the Swiss courts. We have addressed the jurisdictional questions in response to Scott's first issue. We overrule Scott's fourth issue.

### AWARD OF ATTORNEY'S FEES

In his fifth issue, Scott complains of the trial court's award of attorney's fees. UIFSA provides for the recovery of attorney's fees "if an obligee prevails." TEX. FAM. CODE ANN. § 159.313(b). In addition, section 31.002(e) of the Civil Practice and Remedies Code permits the recovery of attorney's fees by a judgment creditor. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e). Scott argues that because Monika "is not entitled to principal relief sought, there is no basis for recovery or the award of attorneys' fees." We have concluded that the trial court

–16

properly registered and enforced the Swiss court orders against Scott. The trial court's award of attorney's fees to Monika was proper. We overrule Scott's fifth issue.

## CONCLUSION

We overrule Scott's five issues. We affirm the trial court's judgment.

120064F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROLAND SCOTT ARNELL, Appellant

No. 05-12-00064-CV     V.

MONIKA ELIZABETH ARNELL,
Appellee

On Appeal from the 256th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-09-09155.
Opinion delivered by Justice FitzGerald,
Justices Bridges and Myers participating.

     In accordance with this Court's opinion of this date, the trial court's Order on Petition for Registration and Enforcement of Support Orders and Order for Turnover is **AFFIRMED**.

     It is **ORDERED** that appellee Monika Elizabeth Arnell recover her costs of this appeal from appellant Roland Scott Arnell.

Judgment entered November 6, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–18